# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 26, 2010

No. 09-50853
Summary Calendar

Lyle W. Cayce
Clerk

TOBI DAVIS,

Plaintiff - Appellant

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:08-CV-230

Before HIGGINBOTHAM, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Tobi Davis alleges that the Life Insurance Company of North America ("LINA") wrongfully denied benefits under a plan covered by the Employee Retirement Income Security Act of 1974. *See* 29 U.S.C. §§ 1001-1461. After the denial, Ms. Davis sought relief in district court, which granted summary judgment in favor of LINA. She appeals, claiming wrongful denial of benefits. Finding no abuse of discretion, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-50853

## FACTS AND PROCEDURAL HISTORY

The underlying facts of this case are not in dispute. Tobi Davis's husband, Carl Chester Davis, was killed when his motorcycle crashed on October 7, 2006. At the time of the crash, Mr. Davis was operating the motorcycle with a blood alcohol level above the state limit of 0.08%. Mr. Davis was driving above the sixty-miles-per-hour speed limit, and his motorcycle left the road at a curve in the road. No other vehicles were involved. The cause of death was listed as "multiple blunt force injuries." The crash occurred in daylight, with clear or cloudy weather and a dry road surface.

The forensic toxicologist hired by LINA determined Mr. Davis's blood alcohol content to be between 0.28% and 0.368%. He reported that at this level of intoxication, Mr. Davis would have a delayed response time and would be more likely to take greater risks. Further, an individual with that blood alcohol level would have impaired sensory-motor skills, attention, judgment, and control, as well as "reduced visual acuity, reduced peripheral vision, increased reaction time, and disturbances of perception of motion and dimensions."

The toxicologist considered lay witness statements that Mr. Davis did not appear intoxicated, concluding that "regardless of tolerance [to the effects of alcohol,] at a BAC of 0.28% Mr. Davis would have been impaired to the extent that it likely was a causative factor in his crash leading to his death."

Through his employer, Mr. Davis had group life and accident insurance with LINA. He had life insurance coverage, as well as three types of accidental death and dismemberment ("AD&D") coverage – basic, voluntary, and supplemental. The basic benefits were paid for by Mr. Davis's employer as an employee benefit, and Mr. Davis had opted to pay for the additional voluntary and supplemental coverage.

After her husband's death, Ms. Davis filed a timely claim with LINA for life insurance benefits and the three types of AD&D benefits. LINA paid

No. 09-50853

$105,000 in life insurance benefits, but denied all AD&D benefits. The basic AD&D benefits were denied because the policy contained an explicit exclusion for intoxication. The voluntary and supplemental benefits were denied because the death did not meet the definition of a "Covered Loss" under the policy.

Ms. Davis twice appealed the denial of the voluntary and supplemental AD&D benefits, and LINA again denied coverage. In each denial, LINA explained that Mr. Davis's death did not meet the definition of a "Covered Accident" under the policy. In one of the three denial letters, LINA also cited the self-inflicted injury exclusion.

After LINA's final denial of coverage, Ms. Davis filed suit in the United States District Court for the Western District of Texas. On August 25, 2009, the district court granted LINA's motion for summary judgment.

DISCUSSION

We review the district court's grant of summary judgment *de novo* and apply the same standards as the district court. *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 651 (5th Cir. 2009). When an insurance plan has granted the administrator discretionary authority to construe the plan's terms, the standard is one of examining for an abuse of discretion. *Id.* at 651-52.

The district court identified the two-step inquiry for this review, which first is to examine whether the plan administrator's decision was legally correct, and if it was not, then to evaluate whether the administrator's discretion was abused. *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 257 (5th Cir. 2009). When we may more readily evaluate the exercise of discretion, we may skip the first step in the analysis. *Holland v. Int'l Paper Co. Retirement Plan*, 576 F.3d 240, 246 n.2 (5th Cir. 2009). We take the latter approach.

"Abuse of discretion review is synonymous with arbitrary and capricious review." *Cooper*, 592 F.3d at 652 (citing *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 214 (5th Cir. 1999)). We will affirm the

3

administrator's decision if it is supported by "substantial evidence." *Id.* Evidence is considered substantial where it is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2005) (citation omitted). An arbitrary decision is one "made without a rational connection between the known facts and the decision." *Meditrust*, 168 F.3d at 215 (quotation marks and citation omitted). "A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Holland*, 576 F.3d at 246 (quotations marks and citations omitted).

A conflict of interest occurs where, as here, the same entity bears responsibility for determining eligibility and for paying benefits. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S. Ct. 2343, 2349 (2008). That conflict is weighed as a factor in deciding if the administrator has abused its discretion. *Id.* at 2350.

Ms. Davis contends that the administrator's interpretation of the plan contradicts its plain meaning and constitutes an abuse of discretion. She cites *Todd v. AIG Life Insurance Company,* 47 F.3d 1448 (5th Cir. 1995). Though *Todd* involved similar coverage, the relevant terms were different. The court in *Todd* interpreted the term "accidental" in an AD&D policy. *Id.* at 1452. Other cited AD&D cases also involve different terms. *E.g., Wickman v. Nw. Nat'l Ins. Co.*, 908 F.2d 1077 (1st Cir. 1990).

Here, the AD&D policy provided coverage to a "Covered Loss resulting directly and independently of all other causes from a Covered Accident." The policy defines a "Covered Accident" as a "sudden, unforeseeable, external event that results, directly and independently of all other causes, in a Covered Injury or Covered Loss . . . ."

The policy does not define the term "unforeseeable." We conclude that the administrator has interpreted "unforeseeable" in a manner consistent with the term's plain meaning. *See, e.g.*, Black's Law Dictionary 649 (8th ed. 2004) (defining foreseeability as a "quality of being reasonably anticipatable"). Mr. Davis was driving with a blood alcohol content that was, according to the toxicologist's estimates, somewhere between three and a half and four and a half times the legal limit. Considering the toxicologist's findings as to the effects of such severe intoxication, it was reasonable to decide that a foreseeable consequence of riding a motorcycle in that condition would be a serious accident.

The administrator's conflict of interest does not alter our conclusion. We take into account various factors in judging the reasonableness of the decision. *Glenn*, 128 S. Ct. at 2351. We find the administrator's conclusion a reasonable one for which no evidence or inference exists that it was affected by a conflict.

Because we hold the administrator did not abuse its discretion in denying coverage because the death was not a "Covered Accident," we do not address the applicability of any other policy exclusions.

AFFIRMED.