# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 1, 2010

No. 09-51010

Lyle W. Cayce
Clerk

TERRY S. SANCHEZ,

Plaintiff–Appellant

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA,

Defendant–Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:08-CV-527

Before CLEMENT, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:*

This appeal arises out of the 2007 death of Hector Javier Sanchez in a one-car accident. At the time of his death, Hector was covered under a group accident policy underwritten by Life Insurance Company of North America (LINA) and subject to ERISA. Hector's wife, Terry Sanchez, submitted a claim under this policy following his death. LINA denied her claim. After exhausting her administrative remedies, Mrs. Sanchez filed suit under 29 U.S.C. §1132, alleging that LINA abused its discretion when it denied her claim. On cross-

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

motions for summary judgment, the district court found for LINA. Mrs. Sanchez appealed. We hold that LINA's decision that Mr. Sanchez's death did not constitute a "Covered Accident" was not an abuse of discretion. Because this decision is determinative of coverage, we need not reach Mrs. Sanchez's question regarding LINA's application of the policy's "Self-Inflicted Injury" exclusion. Accordingly, we AFFIRM the district court's entry of judgment in favor of LINA.

## FACTS AND PROCEEDINGS

Mr. Sanchez's employer provided a group accident policy ("Policy") for its employees. The Policy was underwritten by LINA and subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). It provided accidental death and dismemberment benefits when "the Covered Person suffers a Covered Loss resulting directly and independently of all other causes from a Covered Accident." A "Covered Accident" is defined, in relevant part, as a "sudden, unforeseeable, external event that results, directly and independently of all other causes, in a Covered Injury or a Covered Loss" that "is not contributed to by disease, Sickness, mental or bodily infirmity," and "is not otherwise excluded" by the Policy. The Policy excludes coverage for, among other things, "intentionally self-inflicted Injury, suicide or any attempt thereat while sane or insane."

On the night of January 6, 2007, Mr. Sanchez died in a one-car crash.[1] He spent the evening with a friend, Joe Arthur Gutierrez, drinking and watching a Dallas Cowboys' football game. He departed at approximately 10:30 p.m. and exhibited no signs of intoxication at that time. Forty-five minutes later, after Mr. Sanchez had driven approximately twenty-three miles, five witnesses saw

---

[1] We avoid the use of the generic term "accident" to prevent any confusion between it and "Covered Accident," a phrase defined in the Policy, the meaning of which is the central dispute in this appeal.

his vehicle swerve to the left shoulder, swerve sharply to the right, and roll over several times.  Sanchez was ejected from the vehicle.  He was pronounced dead at the scene shortly thereafter.  The police report did not note any weather, road, or vehicle conditions that may have contributed to the crash, nor did it indicate that Mr. Sanchez had been driving irregularly or erratically prior to the crash.  The autopsy report and death certificate indicated that Mr. Sanchez had died as a result of multiple injuries "sustained when the vehicle he was driving reportedly lost control and rolled over." Both ruled his death to be an "accident." A toxicology analysis of Mr. Sanchez's blood and vitreous humor showed that, around the time of his death, his blood ethanol was 0.174% and vitreous ethanol was 0.170%.[2]

Following Mr. Sanchez's death, Mrs. Sanchez filed a timely claim for accidental death benefits under the Policy.  LINA denied the claim, determining that the crash was not a "Covered Accident," as defined by the Policy, and that the "intentionally self-inflicted Injury" exclusion precluded coverage.  LINA concluded that the crash was caused by Mr. Sanchez's driving under the influence of alcohol and that such a crash was not "unforeseen," as required by the Policy.  It also determined that Mr. Sanchez's voluntary decision to drink a large amount of alcohol and drive contributed to the crash.

Mrs. Sanchez appealed these decisions, submitting an affidavit from Mr. Gutierrez and asserting that statistics show that the majority of those who drive under the influence of alcohol will make it to their destinations without incident.  In response, LINA obtained an opinion from a forensic consultant, Frederick Fochtman, Ph.D., opining "with a reasonable degree of scientific certainty that

---

[2] The State of Texas defines intoxication as "having an alcohol concentration of 0.08 or more."  TEX. PENAL CODE ANN. § 49.01(2) (Vernon 2003).

Mr. Sanchez's BAC and resultant impairment was a causative factor in the accident that resulted in his death." LINA denied Mrs. Sanchez's appeal for the same two reasons it denied her claim.

After receiving LINA's second denial of coverage, Mrs. Sanchez again appealed. With her appeal, she submitted a report from a toxicologist, James Garriott, Ph.D., stating that "the degree to which individuals are affected by alcohol is largely a function of tolerance" and that Mr. Gutierrez's affidavit indicated that Mr. Sanchez had considerable alcohol tolerance. It further stated that the use of alcohol does not constitute "an implicit attempt to harm [oneself]." In response, LINA obtained a second report from Dr. Fochtman, who concluded: "The obvious fact is that Mr. Sanchez did have an accident, and even Dr. Garriott recognizes that a person with a BAC of 0.174% is at a greater risk of having an accident due to impairment of driving-related skills. As I recall from the report of the accident, there was no apparent reason provided for his swerving his vehicle and rolling over, therefore a strong indication of driver error." LINA denied the second appeal.

Mrs. Sanchez then filed an ERISA claim against LINA under 29 U.S.C. § 1132, alleging that LINA had abused its discretion when it denied her claim. On cross-motions for summary judgment, the district court conducted a thorough analysis and concluded that LINA's interpretation of a "Covered Accident" was both legally correct and not an abuse of discretion. It further determined that LINA's interpretation of the self-inflicted injury exclusion was legally incorrect, but not an abuse of discretion. Mrs. Sanchez appealed.

## STANDARD OF REVIEW

Standard summary judgment rules control in ERISA cases. *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 225 (5th Cir. 2004). We review the district court's decision to grant a motion for summary judgment *de novo*,

"applying the same standards as the district court." *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 651 (5th Cir. 2009).

## DISCUSSION

As noted above, LINA denied coverage on Mrs. Sanchez's claim because it determined that Mr. Sanchez's death was not the result of a "Covered Accident": "[a] sudden, unforeseeable, external event that results, directly and independent of all other causes, in a Covered Injury or a Covered Loss." This circuit reviews plan administrators' coverage decisions *de novo* unless the plan expressly gives discretionary authority over these decisions to the plan administrator. *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 257 (5th Cir. 2009). Where discretion has been granted, we review coverage decisions only for abuse of discretion. *Id.* We apply the later review here because LINA possesses "the authority, in its discretion, to interpret the terms of the plan documents and decide questions of eligibility for coverage or benefits under the plan and to make any related findings of fact." A plan administrator's factual determinations are always reviewed for abuse of discretion. *Stone*, 570 F.3d at 257.

To determine whether a plan administrator has abused its discretion, the court applies a two-step analysis. *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008). The first step is to determine whether the administrator's decision was "legally correct." *Id.* (citing *Pickrom v. Belger Cartage Serv., Inc.*, 57 F.3d 468, 471 (5th Cir. 1995)). If it was, our inquiry ends, as a legally correct decision precludes any abuse of discretion. *Id.* If the administrator's interpretation was not legally correct, we review it for abuse of discretion. *Stone*, 570 F.3d at 257. In cases where "we can more readily determine that the decision was not an abuse of discretion," we may proceed directly to the second

5

prong of the analysis. *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 n.2 (5th Cir. 2009) (collecting cases). We will follow this method of analysis and proceed immediately to the second prong.

An abuse of discretion occurs when a plan administrator's decision is not "based on evidence, even if disputable, that clearly supports the basis for its denial." *Id.* at 246 (quotation marks and citations omitted). This review is "synonymous with arbitrary and capricious review." *Cooper*, 592 F.3d at 652. A decision is arbitrary if it is "made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Meditrust Fin. Servs. Corp. v. Sterling CheMrs., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999) (quotation marks and citation omitted). "[R]eview of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end." *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007) (quotation marks and citation omitted).

As part of the abuse of discretion prong of the analysis, we must also consider any conflicts of interest. *Holland*, 576 F.3d at 247. "[W]e weigh the conflict of interest as a factor in determining whether there is an abuse of discretion in the benefits denial, meaning we take account of several different considerations of which conflict of interest is one." *Id.* (citing *Crowell*, 541 F.3d at 312 ). *See also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 104, __, 128 S. Ct. 2343, 2350–51 (2008). Here, a conflict exists because LINA was responsible for both determining eligibility and paying benefits. *See, e.g.*, *Glenn*, 554 U.S. at __, 128 S. Ct. at 2350. This type of conflict, however, is a "minimal" one. *Corry*, 499 F.3d at 398. Mrs. Sanchez has not put forth any evidence or argument regarding any other conflicts.

First, we first address whether LINA's factual determination that Mr. Sanchez's impaired driving caused his fatal crash was an abuse of discretion. There is ample evidence in the record—including his reported blood alcohol level of 0.174%—that Mr. Sanchez was driving under the influence of alcohol and no evidence pointing to an alternate explanation for the crash. Both parties' experts agreed that individuals with a blood alcohol level of 0.174% "are at greater risk of having an accident due to impairment of driving-related skills such as reaction time." Evidence also exists that Mr. Sanchez did not appear to be impaired when he chose to drive home, that he drove twenty-three miles without any documented problem, and that persons under the influence of alcohol often drive without incident. Considering this evidence and LINA's "minimal" conflict of interest, we find that LINA did not abuse its discretion when it determined that driving under the influence of alcohol contributed to Mr. Sanchez's automobile crash. This decision is supported by evidence on the record and "fall[s] somewhere on a continuum of reasonableness." *Corry*, 499 F.3d at 398 (quotation marks and citation omitted).

We next evaluate whether LINA abused its discretion by interpreting the Policy's definition of a "Covered Accident"—"[a] sudden, unforeseeable, external event"—not to include the single-car crash caused by Mr. Sanchez's driving under the influence of alcohol. In addition to the evidence noted above, the record also shows the following: (1) Mr. Sanchez's blood alcohol level of 0.174% was more than twice the legal limit for driving an automobile in Texas; (2) the medical examiner concluded that Mr. Sanchez's death was the result of multiple injuries and was an "accident"; (3) five witnesses reported that Mr. Sanchez's vehicle swerved sharply in the road and rolled over several times before ejecting him; (4) Mrs. Sanchez made an (unsupported) claim that most people who drive drunk are not involved in deadly accidents, making there "not a high likelihood Mr.

Sanchez would be involved in an accident and die"; (5) Dr. Fochtman opined that a person with Mr. Sanchez's blood alcohol level would have "poor judgment, increased reaction time, muscle incoordination, loss of visual acuity, [] increased risk taking" and be unable to drive safely; (6) Dr. Garriott submitted that "[t]he degree to which individuals are affected by alcohol is largely a function of tolerance" and "Mr. Sanchez had a considerable alcohol tolerance"; and (7) Dr. Fochtman cited "volumes of references regarding the effects of alcohol producing impairment regardless of tolerance."

Based on all of the evidence in the record, and again considering LINA's minimal conflict of interest, we conclude that LINA did not abuse its discretion when it determined that Mr. Sanchez's death was not the result of "[a] sudden, unforeseeable, [and] external event."  Additional evidence regarding the foreseeability of a fatal crash resulting from driving under the influence would have strengthened LINA's decision.[3]  Its denial of coverage is nevertheless "based on evidence, even if disputable, that clearly supports the basis for its denial."  *Holland*, 576 F.3d at 246 (quotation marks and citations omitted). LINA's conclusion "fall[s] somewhere on a continuum of reasonableness—even if on the low end."  *Corry*, 499 F.3d at 398 (quotation marks and citation omitted).  It was therefore not an abuse of discretion.

Our resolution of this appeal is consistent with *Davis v. Life Insurance Co. of North America*, 2010 WL 2102040 (5th Cir. May 26, 2010) (per curiam),[4] which presents nearly identical facts.  Davis, whose blood alcohol level was between

---

[3] The weight of the evidence presented by both parties relates to the factual question of whether or not Mr. Sanchez's driving under the influence caused the crash.  A lesser amount of evidence was presented on the issue of whether or not a crash in these circumstances was an "unforeseeable" event.

[4] Mrs. Sanchez included a now-moot request in her reply brief that oral argument in her appeal be combined with that in *Davis*.

0.28% and 0.368%, died when the motorcycle he was driving left the road. *Id.* at *1. No other persons or vehicles were involved in the crash and no weather, vehicle, or road conditions that may have contributed to the crash were noted, although witnesses testified that Davis did not appear intoxicated. *Id.* LINA denied coverage on Davis's policy for the same reasons cited in this case: there was no "Covered Accident" and coverage was precluded by the self-inflicted injury exclusion. *Id.* Finding that "[t]he policy does not define the term 'unforeseeable,'" and that LINA interpreted that term "in a manner consistent with the term's plain meaning," we affirmed a grant of summary judgment to LINA. *Id.* at *3 (citation omitted).

LINA also denied Mrs. Sanchez's claim because it determined that Mr. Sanchez's death fell under the "intentionally self-inflicted Injury" exclusion in the Policy. Because our decision on LINA's interpretation of a "Covered Accident" is determinative of coverage, we need not address this issue. *See id.*

## CONCLUSION

For the reasons set forth above, we AFFIRM the district court's entry of judgment in favor of LINA.