Marge CLARK, Plaintiff,

v.

## LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant.

Civil Action File No. 1:12–cv–1977–TCB.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 18, 2013.

John W. Sandifer, Michael A. Sierra, Raley & Sandifer, Atlanta, GA, for Plaintiff.

Elizabeth Johnson Bondurant, Nikole Marie Crow, Smith, Moore, Leatherwood, LLP, Atlanta, GA, for Defendant.

## ORDER

TIMOTHY C. BATTEN, SR., District Judge.

This case comes before the Court on the parties' cross-motions for judgment on the administrative record [15, 16].

### I. Background

In this action, Plaintiff Marge Clark seeks to recover insurance benefits under an insurance policy issued to Citigroup N.A. by Defendant Life Insurance Company of North America ("LINA"). The policy provides for accidental death and dismemberment benefits under an employee welfare benefit plan sponsored and maintained by Citigroup and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001. Clark is a beneficiary of the accidental-death policy, as her husband Jeffrey Clark was an employee of Citigroup and a plan participant. Clark seeks benefits as a result of Jeffrey's untimely death.

On June 7, 2009, around 3 p.m., Jeffrey was riding his motorcycle eastbound on Colorado Highway 72 in Boulder, Colorado, when he skidded off the road, was thrown from the motorcycle, and collided with a tree. Tragically, Jeffrey died as a result of the injuries he sustained.

The subsequent investigation showed that at the time of the accident Jeffrey was not wearing a helmet;[1] he had a 0.176

1. This fact is provided by LINA in its briefs filed in this Court. Review of the administrative record, however, does not show that LINA relied on this fact when denying Clark's claim. Indeed, the word "helmet" is mentioned only once in the record: Clark is quoted in a newspaper article as saying that a helmet would not have prevented Jeffrey's death. As the Court's determination of whether LINA's decision was correct and reasonable is limited to the administrative record, the Court will not consider this fact in

gm/dL blood alcohol concentration ("BAC"); and he tested positive for marijuana.

The investigation also showed that Jeffrey was riding downhill below the speed limit. He was approaching a curve on a dry, paved road when he appears to have braked hard and skidded twenty-six feet to the right, off the road. There were no adverse weather conditions at the time of the crash, and there were no other vehicles involved in the crash. There also were no defects or obstacles in the road.

Clark told LINA that Jeffrey was an experienced motorcycle rider who knew how to handle his motorcycle and was well familiar with the road on which the crash occurred. She also stated that visibility on the curve is limited, which makes it harder for motorists to see oncoming traffic until "entering the curve." She contends that the point where Jeffrey could see oncoming traffic is where the skid marks began.

On July 19, 2009, Clark filed a claim for accidental-death benefits, which LINA received on September 1. At the time of his unexpected death, Jeffrey's death benefits under the policy were $107,000. In her claim, Clark stated that "something or someone forced Jeffrey D. Clark off the road at mile marker 43 and he was thrown from his motorcycle and fell 20 feet [and] died."

The policy provides that LINA will "pay benefits for loss from bodily injuries: a) caused by an accident which happens while an insured is covered by this policy; and b) which, directly and from no other causes, result in a covered loss." The policy does not define "accident."

The parties agree that LINA has discretion to determine claims under the policy and to interpret the policy's provisions.

Also, LINA does not have numerical guidelines or quotas regarding claim payments or denials. Employees who initially evaluate claims are paid fixed salaries that are unrelated to the amount or number of claims they approve or deny. In addition, these employees do not receive any incentive or reward and are not evaluated based on the number of claims they approve or deny. Also, LINA's appeal unit is completely separate from the initial evaluation unit. The employee reviewing an appeal does not discuss the claim with the employee who made the initial determination. Furthermore, the financial underwriters are separate from the claims department and appeal unit, neither of which is required to seek approval from the underwriters before making a decision.

By letter dated October 9, 2009, LINA informed Clark that it was denying her claim. The letter said that under the policy an accident was a "sudden, unforeseeable, external event" and that a loss that results from "an action whose outcome is reasonably foreseeable is not a Covered Accident as this policy defines it." LINA explained that "[s]erious injury and death ... are foreseeable outcomes of operating a motor vehicle while legally intoxicated." Thus, LINA determined that a loss "resulting from driving while under the influence of alcohol is not an unforeseeable Covered Accident," and it denied Clark's claim. LINA's letter stated that if Clark could prove that Jeffrey's death "did not result from driving under the influence of alcohol or THC [marijuana]" it would reconsider her claim.

By letter dated December 4, 2009, Clark appealed LINA's initial decision. She contended that the denial was based on insufficient facts and incorrect analysis. She

---

making its decision. *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011). Even if the Court were to consider

this fact, it is additional evidence that only supports the conclusion that LINA's decision was correct and reasonable.

reiterated that Jeffrey's death was "the result of an unforeseen and unexpected circumstance in the roadway, which he attempted to avoid, but which caused him to lose control of the motorcycle and crash. His death was an accident, which is not altered by the findings of the toxicological studies." As discussed below, Clark did not provide any evidence to support her assertion that something or someone in the road caused Jeffrey to lose control and die in the subsequent crash.

By letter dated December 23, 2009, LINA affirmed its initial decision and denied Clark's appeal.

On June 7, 2012, Clark filed this action. On February 22, 2013, the parties filed cross-motions for judgment on the administrative record.

## II. Legal Standard

Although ERISA does not provide a standard for courts reviewing an administrator's denial of benefits, the Eleventh Circuit has provided a "multi-step framework to guide courts in reviewing an ERISA plan administrator's benefits decisions." *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir.2011). The steps are:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable"

grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Id.* at 1355 (citing *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010)).

The parties agree that the policy vests LINA with discretion to interpret its terms. Thus, all steps in the test are potentially at issue, and the Court reviews LINA's decision under the arbitrary and capricious standard. *Id.* at 1355 n. 7. With respect to the last step, "the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Capone*, 592 F.3d at 1196 (quoting *Doyle v. Liberty Life Assurance Co. of Bos.*, 542 F.3d 1352, 1360 (11th Cir.2008)).

Furthermore, under the arbitrary and capricious standard, "[r]eview of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision." *Blankenship*, 644 F.3d at 1354. This evidentiary restriction ensures that the Court determine whether "there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was

made." *Jett v. Blue Cross & Blue Shield of Ala., Inc.,* 890 F.2d 1137, 1139 (11th Cir.1989).

## III. Discussion

### A. De Novo Wrong

■ Under the first step, the Court determines whether LINA's decision to deny benefits was de novo wrong, i.e., whether the Court disagrees with the administrator's decision. *Capone,* 592 F.3d at 1195. Although the Court is sympathetic to the pain Clark has suffered as a result of Jeffrey's unexpected death, the Court does not disagree with LINA's decision. Indeed, applying all of the steps, the Court finds that LINA's decision should remain undisturbed and its motion granted.

As stated above, the policy at issue does not define "accident," but in its October 2009 denial letter, LINA defined "accident" as a "sudden, unforeseeable, external event." Applying this definition to the facts surrounding Jeffrey's crash and death, LINA determined that his death was not an accident and denied Clark's claim.

Clark contends that LINA's decision was wrong because (1) LINA did not properly consider all of the facts in the administrative record, and (2) LINA's interpretation of the word "accident" was an unfair reading of the policy and inconsistent with how federal common law defines that term.[2] A close reading of Clark's arguments shows that she does not necessarily disagree with LINA's definition of "accident" (a "sudden, unforeseeable, external event"), but rather with how LINA interpreted and applied "unforeseeable" to the facts of this case. She contends that although the risks of operating a vehicle under the influence of drugs and alcohol is known, a collision and death under such circumstances is not intended, expected or foreseeable because people frequently operate vehicles when impaired by drugs and alcohol without incident.

### 1. "Accident" Legal Standard

In support of their respective arguments about how "accident" should be determined in this case, both parties look to the two-step test set forth in *Wickman v. Northwestern National Insurance Co.,* 908 F.2d 1077 (1st Cir.1990), and adopted by the Eleventh Circuit in *Buce v. Allianz Life Insurance Co.,* 247 F.3d 1133 (11th Cir.2001).[3] Strictly speaking, *Buce* is not

---

**2.** Clark also argues that LINA should have included an alcohol exclusion and causation presumption in the policy since its determination in this case shows that it has adopted a per se rule that losses occurring when the insured is intoxicated will not be considered accidents covered by the policy. However, Clark has not provided any cases holding that the absence of these provisions in and of itself makes LINA's decision incorrect or unreasonable.

Moreover, in *Buce v. Allianz Life Insurance Co.,* 247 F.3d 1133 (11th Cir.2001), discussed *infra,* the court first determined that the accidental-means doctrine barred the beneficiary's lawsuit, and as a result it stated that it had "no occasion to consider whether, on the facts of this case, [the] denial of benefits was, in the alternative, properly based on the policy's intoxication exclusion provision." *Cf.*

*Cozzie v. Metro. Life Ins. Co.,* 140 F.3d 1104, 1111 (7th Cir.1998) ("The absence of an explicit exclusion must be given significant weight in any review of the reasonableness of a decision by the fiduciary to deny coverage. ERISA requires that the plan summary's description of coverage be 'sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.' ") (quoting 29 U.S.C. § 1022(a)(1)).

**3.** LINA did not mention *Wickman* in either decision letter. However, this does not necessarily render its denial of benefits arbitrary and capricious. *Stamp v. Metro. Life Ins. Co.,* 531 F.3d 84, 91 n. 11 (1st Cir.2008). As discussed below, LINA's decision is consonant with the standard set forth in *Wickman* for determining whether an insured's death was an accident.

binding here because it involved a determination that a choice-of-law provision in a particular insurance contract barred the application of *Wickman* and required application of Georgia's "accidental means" doctrine. There is no such choice-of-law provision in the policy here. Nonetheless, *Buce* is strongly persuasive, sufficient to convince this Court that it should apply *Wickman.*

*Wickman,* applying federal common law, used both a subjective and an objective test to determine the meaning of "accident" for purposes of insurance coverage. The court first determined the "reasonable expectations of the insured when the policy was purchased." *Wickman,* 908 F.2d at 1088. If the court determines that the insured subjectively expected that he would not suffer an injury of the type that occurred, then the court should "examine whether the suppositions which underlay that expectation were reasonable." *Id.* If the expectations were unreasonable then the injuries cannot be deemed accidental. "The determination of what suppositions are unreasonable should be made from the perspective of the insured, allowing the insured a great deal of latitude and taking into account the insured's personal characteristics and experiences." *Id.*

If there is insufficient evidence to accurately ascertain the insured's subjective expectation, then the court should "engage in an objective analysis" where "one must ask whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as high likely to occur as a result of the insured's intentional conduct." *Id.* "Employing this approach to defining 'accident,' other courts have reached the conclusion that a death that occurs as a result of driving while intoxicated, although perhaps unintentional, is not an 'accident' because that result is reasonably foreseeable." *Buce,* 247 F.3d at 1145 n. 4 (quoting *Cozzie v. Metro. Life Ins. Co.,* 140 F.3d 1104, 1110 (7th Cir.1998)).

## 2. Jeffrey's Subjective Expectation

In accordance with *Wickman,* the Court begins by analyzing Jeffrey's subjective expectation. Clark contends that Jeffrey did not subjectively expect that he would crash and die on June 7, 2009. As evidence of Jeffrey's subjective expectation, she relies on Jeffrey's experience as a motorcycle rider (over 23,000 miles on the motorcycle he was riding); Jeffrey's familiarity with the road he was on (he had ridden that stretch approximately seventy-five times); the fact that it was daylight at the time of the crash; the absence of vehicle defects noted by the police;[4] the nonexistence of adverse weather conditions; the dryness of the road; and Jeffrey's not speeding.

While the facts cited by Clark are relevant, the Court is not persuaded that they show Jeffrey's subjective expectation when he purchased the policy, which is the relevant inquiry under *Wickman. See Wickman,* 908 F.2d at 1088 ("*[R]easonable expectations of the insured when the policy was purchased* is the proper starting point for a determination of whether an injury was accidental under its terms.") (emphasis added). There is nothing in the administrative record indicating what Jeffrey subjectively expected when he purchased this policy. Regardless, even if the inquiry were limited to Jeffrey's subjective expectations just prior to the crash, any expectation that he might have had that he would not crash his motorcycle and be killed under the circumstances of this case would have been unreasonable.

---

4. Interestingly, Clark contends elsewhere in her briefs that LINA failed to consider a mechanical problem as a possible explanation for the cause of Jeffrey's crash. This is addressed below.

Clark contends that given Jeffrey's experience riding a motorcycle and riding on the road where the crash occurred made it reasonable for him to expect he would not crash and die. However, from Jeffrey's experience it is readily inferred that he knew or should have known the importance of sobriety when riding his motorcycle on a curved road—a road that Clark herself told the local newspaper needed to be "safer for all."

Also, Clark's argument that Jeffrey reasonably expected to arrive home safely because he was looking forward to their upcoming vacation does not make his death an accident. *See Stamp v. Metro. Life Ins. Co.*, 531 F.3d 84, 92 (1st Cir.2008) (rejecting wife's and her deceased husband's coworker's testimony that husband did not "sound impaired" and was "in good spirits" hours before his death as irrelevant to objective inquiry of what insured reasonably should have expected when he drove intoxicated); *Cozzie*, 140 F.3d at 1110 n. 4 ("The problem with [plaintiff's] definition [of "accident"] is that it appears to rely on the insured's subjective intentions or expectations.").

Consequently, even if the Court allows Jeffrey "a great deal of latitude and tak[es] into account [his] personal characteristics and experiences," *Wickman*, 908 F.2d at 1088, the Court must conclude that it was unreasonable for Jeffrey to expect that he would not lose control of his motorcycle, crash and die while riding down the road towards a curve under the influences of alcohol and marijuana. Given his experience riding his motorcycle on the road at issue, Jeffrey should have expected that it was highly likely he could be injured or killed if he rode his motorcycle downhill towards a curve while impaired by his consumption of alcohol and marijuana.

### 3. Reasonable Person's Objective Expectation

A reasonable person in Jeffrey's shoes would also view injury or death as highly likely to occur as a result of riding a motorcycle under similar facts. *See Cozzie*, 140 F.3d at 1110 (describing "ingestion of a huge quantity of alcohol"—the insured's BAC was 0.252—as a "significant assumption of a known risk by the insured"). Contrary to Clark's assertion, Jeffrey's experience riding a motorcycle on this road did not insulate him from crashing and dying. Rather, it gave him—and a reasonable person with similar experience—knowledge of the danger of his intentional conduct.

Clark discounts Jeffrey's BAC and drug-test results, contending that LINA improperly focused on them to the exclusion of other explanations. She argues that LINA ignored her assertion that an unexpected circumstance in the roadway caused the crash. Specifically, she points to the fact that there were skid marks at the site of the crash, which she says indicate that Jeffrey applied his brakes quickly in response to an unexpected occurrence or mechanical failure. However, she has offered nothing beyond her own speculation that an unexpected occurrence existed. She hints that Jeffrey may have swerved to avoid a vehicle traveling in the opposite direction, but there is nothing in the record, including the police report, about the involvement of another vehicle, e.g., its own skid marks. Furthermore, the police investigation did not reveal the involvement of another person, a defect in the road, or an obstacle or debris on the road that would have caused sudden braking and skid marks. Thus, Clark has failed to carry her burden of showing that something other than Jeffrey's impairment and diminished control of the motorcycle caused Jeffrey's skid marks.

With respect to a possible mechanical failure, Clark merely cites to her own note to the local newspaper, in which she stated that the "patrolman determined that the accident was not the result of pilot error, but of an equipment failure." In fact, there is nothing in the police report about equipment failure, and Clark has not provided the testimony of the patrolman who allegedly made this statement. Moreover, elsewhere in her briefs, Clark contradicts this statement by stating that "[n]o vehicle defects were noted by police." Thus, while Clark alleges that LINA "completely ignored" other explanations for the crash, LINA did not (and cannot) ignore evidence that does not exist, and LINA is not required to believe Clark's unsupported explanations of what happened. *See Stamp,* 531 F.3d at 92 ("Because we are concerned with the definition of 'accident' as a threshold of eligibility for benefits, the burden of proof is on Mrs. Stamp to show the existence of coverage. Mrs. Stamp's speculation regarding alternative causes for the collision falls far short of the evidence needed to carry her burden.") (internal citations omitted).

In the absence of other circumstances explaining what caused Jeffrey to crash, Jeffrey's BAC and drug-test results are important factors. *See Stamp v. Metro. Life Ins. Co.,* 531 F.3d 84, 91 n. 9 (1st Cir.2008) ("decedent's degree of intoxication is particularly probative"). Indeed, in light of the entire administrative record, they are a reasonable explanation for what caused Jeffrey to lose control of his motorcycle, brake suddenly, crash, and die.

Nonetheless, Clark argues that Jeffrey's BAC, which was twice the legal limit in Colorado, was lower than that in other cases where death or injury was ruled nonaccidental as a result of the insured's BAC. However, insurance companies' denials of benefits when the insured had a BAC lower than Jeffrey's have been found

reasonable by federal courts. *See Sanchez v. Life Ins. Co. of N. Am.,* 393 Fed.Appx. 229, 230 (5th Cir.2010) (deceased's BAC was 0.174, which was twice the legal limit); *Eckelberry v. Reliastar Life Ins. Co.,* 469 F.3d 340, 345 (4th Cir.2006) (insured had 0.15 BAC, which was fifty percent higher than legal limit); *but see Kovach v. Zurich Am. Ins. Co.,* 587 F.3d 323, 338 (6th Cir. 2009) (insured's injury not highly likely to occur as a result of his 0.148 BAC).

Moreover, Clark never presented *evidence* to LINA that Jeffrey's BAC and drug-test results could not have contributed to the cause of the crash. She did not even state in her appeal letter to LINA that Jeffrey's BAC was so low that it could not have impaired his driving, thus contributing to the cause of his crash. Rather, she merely argued that not everyone who drives under the influence of alcohol dies. Because the Court is "concerned with the definition of 'accident' as a threshold of eligibility for benefits, the burden of proof is on [Clark] to show the existence of coverage." *Stamp,* 531 F.3d at 92. Clark's argument does not make that showing. Moreover, even if Clark had presented such evidence or argument, LINA would not have been required to accept it. *See Blankenship,* 644 F.3d at 1356 (even where beneficiary's own doctors offered different medical opinions, "plan administrator may give different weight to those opinions without acting arbitrarily and capriciously").

Clark also argues that to support its denial of benefits LINA should have provided additional evidence about how Jeffrey's specific BAC and drug level affected his ability to ride his motorcycle. Looking at its December 23, 2009 letter containing its decision on Clark's appeal, LINA stated that a driver with Jeffrey's BAC "will experience a significant impairment of motor coordination, concentration and a loss

of judgment. The driver will also have impaired balance, vision, reflexes, reaction time and hearing." LINA also stated in the initial-decision letter that Jeffrey's BAC was considered a "high BAC in Colorado," and in both letters LINA stated that the police report indicated that the "most apparent human contributing factor" was driving while intoxicated or under the influence of drugs.

Clark asserts that to support its statements about Jeffrey's BAC, LINA should have provided evidence about the specific impact of Jeffrey's BAC on his actions, e.g., a toxicologist's or forensic consultant's findings as to the effects of his level of intoxication, or eyewitness accounts about how Jeffrey was operating his motorcycle just prior to the crash. However, the primary argument that Clark made to LINA as to why she was entitled to benefits was that something else caused Jeffrey's crash. LINA ruled out those other explanations, which left Jeffrey's BAC and drug-test results as the best evidence of what contributed to the cause of Jeffrey's crash. As stated above, Clark did not provide *any* evidence to rebut LINA's initial conclusion that Jeffrey's alcohol and drug impairment contributed to the cause of his crash. Again, LINA could not address arguments that Clark did not raise.

Moreover, such specific evidence is not necessary in light of the facts of this case. Indeed, the two cases which Clark cites for this evidence requirement, *Davis v. Life Insurance Co. of North America,* 379 Fed. Appx. 393 (5th Cir.2010), and *Sanchez v. Life Insurance Co. of North America,* 393 Fed.Appx. 229 (5th Cir.2010), do not hold that such evidence is required. While LINA did present in both of those Fifth Circuit cases scientific evidence about the specific effect of the insured's BAC on his behavior, the court did not hold that such evidence was the basis for affirming LINA's denials of accidental-death benefits.

As stated in *Stamp,* 531 F.3d at 92, "the focus of [the] objective analysis in *Wickman* was not on the statistical probability that death would occur from the decedent's actions. Instead, we were concerned chiefly with what a reasonable person would *perceive* to be the likely outcome of the intentional conduct." Although this portion of the *Stamp* opinion was addressing general statistics about drunk driving provided by the beneficiary, and not addressing scientific evidence about the effect of a particular BAC on a person's behavior, the Court finds that *Stamp* supports the rejection of Clark's contention that such evidence is required in this case.

Clark agrees that *Wickman* controls the determination of the definition of "accident" in this case, and *Wickman* does not require that an insurance company prove what a reasonable person would perceive as highly likely to occur through an expert who details the specific effects the insured's BAC had on his behavior. Rather, the inquiry is what a reasonable person with the insured's experience will perceive, i.e., a fact-specific inquiry—as Clark argues numerous times in her briefs. Here, the facts did not make it necessary for LINA to support its denial of benefits through expert testimony or reports.

A reasonable person with Jeffrey's college education and experience riding a motorcycle on the road at issue would know the dangerous effects that alcohol and marijuana would have on the ability to ride downhill towards a curve. Importantly, there were no other factors that could have contributed to Jeffrey's loss of control, crash and death. Thus, a reasonable person would perceive death as a highly likely outcome of riding a motorcycle downhill towards a curve under the influence of alcohol and drugs even when doing

so in broad daylight on a dry, paved, defect-free road. *See Buce*, 247 F.3d at 1155 (Carnes, J., concurring) ("The circumstances of Mr. Buce's death are that while driving drunk ... he lost control of his automobile and struck a guard rail. There was no evidence of a mechanical problem, no visible hazards, and no skid marks. The weather was clear and the highway was straight. His death was tragic, but the circumstances of it are all too typical of the thousands of alcohol-related traffic deaths that occur on our highways each year.").

For all of these reasons, the Court holds that while Jeffrey's death was tragic, LINA's denial of benefits was not de novo wrong, and its motion should be granted. But even if LINA's decision were de novo wrong, its motion would be granted.

## B. Other Steps Evaluating LINA's Denial of Benefits

■ Under the second step in the analysis, the Court must determine whether the plan grants discretion to LINA to determine benefits eligibility. It is undisputed that the plan does grant such discretion. Consequently, the arbitrary and capricious standard applies. Under this standard, the administrator's decision is affirmed if, "based upon the facts as known to the administrator at the time the decision was made," there was a "reasonable basis for the decision." *Glazer v. Reliance Std. Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008). In making this decision, the Court's role is to determine whether the decision was made "rationally and in good faith—not whether it was right." *Griffis v. Delta Family–Care Disability*, 723 F.2d 822, 825 (11th Cir.1984).

■ Based on the information available to LINA at the time it denied Clark's initial claim and appeal, its decision was reasonable. The administrative record shows that Jeffrey rode a motorcycle under the influence of alcohol and marijuana; the road was dry and free of defects; no other vehicles, obstacles, or people were involved; and it was light outside. LINA reasonably concluded that Jeffrey's intentional conduct of driving under the influence contributed to his crash and made his death highly likely and nonaccidental. *See Stamp*, 531 F.3d at 90 ("courts have emphasized the decedent's level of intoxication when determining that a plan administrator's denial of benefits was reasonable"); *Cozzie*, 140 F.3d at 1111 (finding denial of accidental-death benefits reasonable where there were no witnesses to car crash and no apparent cause of crash other than insured's impaired condition). Thus, for all the reasons LINA's decision was right, its decision was also reasonable.

Because reasonable grounds for LINA's decision exist, the Court next determines if LINA operated under a conflict of interest. Clark has the burden to "show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Doyle*, 542 F.3d at 1360. Clark has not presented any evidence that LINA's decision is the result of self-interest; rather, the record shows that its decision was based on an unbiased consideration of the facts and the policy at issue. Therefore, there was not a conflict that rendered LINA's denial of benefits arbitrary and capricious. *Blankenship*, 644 F.3d at 1357. Thus, LINA's motion should be granted on this ground as well.

## IV. Conclusion

Plaintiff Marge Clark's motion for judgment on the administrative record [16] is DENIED, and Defendant LINA's motion for judgment on the administrative record [15] is GRANTED. The Clerk is DIRECTED to enter judgment in favor of

LINA and against Clark and to close this case.